UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HISHAM ELIAS,

    Plaintiff,

v.                                            Case No. 08-14583

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
                                                /

**OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTION NUMBERS ONE AND THREE AND DIRECTING THE GOVERNMENT TO FILE A RESPONSE TO PLAINTIFF'S OBJECTION NUMBER TWO BY DECEMBER 28, 2009**

On October 26, 2009, Magistrate Judge Mark A. Randon issued a Report and Recommendation ("R&R") in the above-captioned matter, recommending that this court grant Defendant Commissioner of Social Security's Motion for Summary Judgment and deny Plaintiff Hisham Elias's Motion for Summary Judgment.  On November 3, 2009, Plaintiff filed timely objections to the R&R.  Having reviewed the briefs, the court concludes that a hearing is unnecessary.  *See* E.D. Mich. LR 7.1(e)(2).  For the reasons stated below, the court will overrule Plaintiff's Objection Numbers One and Three, and direct the Government to file a response to Plaintiff's Objection Number Two by **December 28, 2009**.

**I. BACKGROUND**

On December 14, 2005, Plaintiff filed an application for a period of disability and disability insurance benefits and made a claim for supplemental security income payments.  (Tr. at 17.)  In order to determine whether a person is disabled under the Social Security Act, the Social Security Administration applies a five-step sequential

analysis pursuant to C.F.R. § 404.1520. The Sixth Circuit has summarized the steps as follows:

> The claimant must first show that she is not engaged in substantial gainful activity. Next, the claimant must demonstrate that she has a 'severe impairment.' A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and 'meets or equals a listed impairment.' If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

*White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 282 (6th Cir. 2009) (citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001), and 20 C.F.R. § 404.1520(a)(4)(i)-(v)).

The ALJ applied the five-step sequential analysis under C.F.R. § 404.1520 and found that Plaintiff was not disabled as defined in the Social Security Act. (Tr. at 28.) Under steps one and two, the ALJ found that Plaintiff had "not engaged in substantial gainful activity since March 2, 2005" and that Plaintiff had the following severe impairments:

> status post ligation and excision of the right thigh varicosity; history of non-insulin-requiring diabetes; hypertension; asthma; severe dysthymia; morbid obesity; major depression, recurrent severe (provisional) and with psychotic symptoms; post-traumatic stress disorder; rule out bipolar disorder; morbidly obesity; mild obstructive sleep apnea; moderate hypoxia; moderate sleep disruption; coronary artery disease; hypertension; chronic obstructive pulmonary disease; left heart catheterization; moderate disease in the left coronary system; total occlusion in the right coronary artery; hyperlipidemia; chronic obstructive pulmonary disease; shortness of breath; fatigue; and back pain.

(*Id.* at 19-20 (citations omitted).) At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal "one of the listed impairments in 20 CFR

Part 404, Subpart P, Appendix 1." (*Id.* at 22.)  At step four, the ALJ concluded that Plaintiff had a residual functional capacity to perform unskilled entry level sedentary work with the following exceptions:

> a lifting limitation of 10 pounds where he would be required to lift less than five pounds and frequently less than one pound or less, sit eight hours a day or the majority of the day, stand for up to one hour, in an office or quasi office setting, in a relatively clean environment without obvious particulates in the atmosphere, and where he would be able to elevate his feet to footstool height of 15 to 18 inches.

(*Id.* at 24.)  Based on this residual functional capacity, the ALJ concluded that Plaintiff was unable to perform any past relevant work.  (*Id.* at 24-27.)  At step five, the ALJ determined that Plaintiff was not disabled because "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform."  (*Id.* at 27.)  Specifically, the ALJ determined that Plaintiff could perform the jobs of lobby attendant and badge checker in a hospital or clinical setting, and that there were 6,000 of these jobs in Southeast Michigan, 12,000 in Michigan, and 200,000 in the national economy.  (*Id.* at 28.)

On October 28, 2008, Plaintiff sought review of the Commissioner's decision in this court pursuant to 42 U.S.C. § 405(g).  The case was referred to Magistrate Judge Steven D. Pepe, and then subsequently reassigned to Magistrate Judge Randon pursuant to Administrative Order 09-AO-027.  Magistrate Judge Randon recommended granting the Commissioner's Motion for Summary Judgment, concluding that the ALJ's determination that Plaintiff was not disabled was supported by substantial evidence.  (R&R at 2.)  Plaintiff has lodged three objections to the Magistrate Judge's R&R.

## II.  STANDARD

### A. Substantial Evidence Standard

Pursuant to 42 U.S.C. § 405(g), the Commissioner's findings of fact are conclusive if supported by substantial evidence.  When the Appeals Council declines review, "the decision of the ALJ becomes the final decision of the [Commissioner]." *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) (per curiam).  "The decision of an ALJ is reviewed to determine whether it is supported by substantial evidence and consistent with applicable law."  *Pittsburgh & Conneaut Dock Co., v. Dir., Office of Workers' Comp. Programs*, 473 F.3d 253, 258 (6th Cir. 2007). This judicial review is limited to the record and evidence that was before the ALJ.  *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (citing *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993)).

The court's review of the record for substantial evidence is quite deferential to the ALJ's evaluation of the facts.  The court must uphold the ALJ's finding if supported by substantial evidence.  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Pittsburgh & Conneaut Dock Co.*, 473 F.3d at 259 (citation omitted), "even if that evidence could support a decision the other way," *Casey*, 987 F.2d at 1233.  Moreover, the court bases its review on the entire record, not just what the ALJ cited.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001) ("Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council.").

4

**B. Timely Objections and *De Novo* Review**

The filing of timely objections requires the court to "make a *de novo* determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). This *de novo* review, in turn, requires this court to re-examine all the relevant evidence previously reviewed by the magistrate judge to determine whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1). The court may "receive further evidence" if desired. *Id.*

A party who files timely objections to a magistrate judge's report in order to preserve the right to appeal must be mindful of the purpose of such objections: to provide the district court "with the opportunity to consider the specific contentions of the parties and to correct any errors immediately." *Walters*, 638 F.2d at 949-50. The Supreme Court upheld this rule in *Thomas v. Arn,* 474 U.S. 140 (1985), noting that "[t]he filing of objections to a magistrate's report enables the district judge to focus attention on those issues--factual and legal--that are at the heart of the parties' dispute." *Id.* at 147 (footnote omitted).

Furthermore, "[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

### III.  DISCUSSION

### A. Objection Number One

In his first objection, Plaintiff argues that the Magistrate Judge erred by finding that the ALJ properly discounted the opinions of Dr. Hemachandra, Plaintiff's treating psychiatric expert.  (Pl.'s Obj. at 3.)  Dr. Hemachandra assigned Plaintiff a GAF[1] of 40 on July 19, 2005 and again on September 28, 2007.  (Tr. at 22.)  The ALJ did not give Dr. Hemachandra's assignment of a GAF of 40 much weight because it failed to take into account that Plaintiff's mental impairment improved with treatment and medication and it was not demonstrative of Plaintiff's actual functioning in terms of "daily living, social functioning and ability to attend and concentrate." (*Id.* at 22-24.)  Instead, the ALJ gave greater weight to GAFs of 51 to 60.  (*Id.* at 22.)

---

[1]Global Assessment of Functioning (GAF) "examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations."  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 275-76 (6th Cir. 2009).  The GAF score is:

> a subjective determination that represents the clinician's judgment of the individual's overall level of functioning. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). A GAF score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood. A GAF of 41 to 50 means that the patient has serious symptoms . . . OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).  A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning.

*Id.* at 276 (quoting *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 924 n.1 (E.D. Mich. 2005)) (alteration in original).

The Magistrate Judge concluded that the "ALJ's decision to give little weight to Dr. Hemachandra's assigned GAFs of 40 is supported by conflicting substantial evidence in the records." (R&R at 12.) The Magistrate Judge found that this decision was "supported by numerous facts," including that "Plaintiff's mental impairment improved with treatment and medication, and he is not markedly limited in any way because of his mental condition." (*Id.* at 11-12 (citations omitted).) The Magistrate Judge noted the evidence that the ALJ used to support this decision, including that Plaintiff was "only moderately restricted in the areas of daily living and social functioning," that Plaintiff spoke Arabic, Chaldean, as well as English, and that Plaintiff had only moderate difficulties "with regard to concentration, persistence or pace." (*Id.* at 12.)

The court agrees with the Magistrate Judge that the ALJ's decision to not give much weight to Dr. Hemachandra's GAF scores of 40 was supported by substantial evidence. Initially, as the Magistrate Judge correctly stated, a GAF score is not raw medical data and "the Commissioner 'has declined to endorse the [GAF] score for use in the Social Security and SSI disability programs, and has indicated that [GAF] scores have no direct correlation to the severity requirements of the mental disorders listings.'" (R&R at 12 (quoting *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007) (alteration in original).) Thus, the ALJ was not required to give the GAF scores of 40 any weight.

Also, as required by agency regulations, the ALJ gave good reasons for the weight it gave to Plaintiff's treating physician's opinion regarding the GAF score. *See Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 469 (6th Cir. 2006) ("Recent opinions

7

from this court reflect that the ALJ must provide good reason for the weight given a treating source's opinion."); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) ("An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" (quoting 20 C.F.R. § 404.1527(d)(2)). The ALJ declined to give the GAFs of 40 much weight because they failed to take into account Plaintiff's improvement with treatment and they failed to take into account Plaintiff's actual functioning. (Tr. at 22-24.) Regarding Plaintiff's improvement with treatment, the ALJ noted five instances where Plaintiff indicated that he had no side effects from the medication, three instances where psychiatrists found that Plaintiff's depression was in partial remission and that his condition was stable, and two instances where the Plaintiff indicated that he felt "better" or "okay." (*Id.* at 22-23.) With respect to Plaintiff's functioning, the ALJ stated that Plaintiff had (a) moderate restriction in daily living, (b) moderate difficulties in social functioning, and (c) moderate difficulties with regard to concentration, persistence, or pace. (*Id.* at 23.) The ALJ grounded this conclusion on (a) Plaintiff's ability to speak Arabic, Chaldean, and English, (b) the fact that Plaintiff lived alone, had few friends, and was financially dependent on his sister, and (c) the fact that during a psychiatric examination, Plaintiff was able to name the months of the year, could remember the names of presidents, and could perform simple calculations but had difficulty performing arithmetic in the serial seven status. (*Id.*) Based on all of this, the ALJ decided to give

greater weight to a GAF score of 51 to 60.[2]  The court concludes that substantial evidence supported this decision, and therefore the court will overrule Plaintiff's objection.

### B. Objection Number Two

Plaintiff objects to the Magistrate Judge's rejection of his argument that the "ALJ failed to pose complete and accurate hypothetical questions to the vocational expert." (Pl.'s Obj. at 7.)  Plaintiff argues that the hypothetical question was defective because it failed to include Plaintiff's mental limitations. (*Id.* at 9.)  In addressing Plaintiff's argument, the Magistrate Judge stated, "Dr. Hemachandra concluded that Plaintiff was not markedly limited in any of the categories in the completed Mental Residual Functional Capacity Assessment.  Thus, the ALJ properly omitted any limitation found by Dr. Hemachandra in the MRFCA." (R&R at 16.)

Having reviewed the R&R and Plaintiff's Objections, the court concludes that further briefing on this issue is appropriate.  The court will therefore direct the Government to file a response to Plaintiff's Objection #2, addressing the following issues:

---

[2]The ALJ's statement that "claimant was assigned a GAF of 51 from May 26 – May 25, 2005, and a GAF of 60 as of May 26, 2005," is not entirely correct.  (Tr. at 22.)  In support of this statement, the ALJ cited to Plaintiff's assessment by Macomb County Community Mental Health ("MCCMH") on May 26, 2005.  (*Id.*)  In this assessment, the report states that Plaintiff's current GAF is 41, his highest GAF in the last year was 51, and his expected GAF at discharge is 60.  (*Id.* at 221.)  Thus, Plaintiff was not assigned a GAF of 51 from May 26 – May 25, 2005, but instead MCCMH determined that his highest GAF during that time period was 51.  Also, MCCMH did not assign Plaintiff a GAF of 60 on May 26, 2005, but instead stated that his *expected* GAF at discharge was 60, and that his *current* GAF was 41.  (*Id.*)  Despite the ALJ misconstruing this report, the court agrees with the Magistrate Judge that the ALJ's decision to not give much weight to the GAF of 40 was supported by substantial evidence.

***(1)   Whether the hypothetical question was flawed because the ALJ asked if moderate to mild depression would have a negative impact on the performance of the jobs, when the ALJ previously determined that the Plaintiff had the severe impairment of "major depression, recurrent severe (provisional) and with psychotic symptoms."***

Plaintiff argues that the hypothetical should have mentioned "the severe impairments of: severe dysthymia; major depression, recurrent severe (provisional) and with psychotic symptoms or post traumatic stress disorder." (Pl.'s Objs. at 8.) Plaintiff's argument is incorrect because all impairments deemed severe in step two are not required to be included in the hypothetical. *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (holding that hypothetical questions are not required to include lists of a claimant's medical conditions).

However, the ALJ did ask the vocational expert about one of Plaintiff's medical conditions, specifically whether moderate to mild depression would have a negative impact on the job of lobby attendant or badge checker. The vocational expert answered, "Well, just in general, Your Honor, talking about mild to moderate difficulty with depression would not [be] preclusive." (Tr. at 290.) Contrary to his question, the ALJ determined in his opinion that Plaintiff had the severe impairment of severe depression (provisional) with psychotic symptoms, as well as severe dysthymia and post traumatic stress disorder. (*Id.* at 20.) While this discrepancy involved Plaintiff's medical condition, not the limitations arising therefrom, there is caselaw holding that misconstruing the severity of mental limitations in a hypothetical constitutes reversible error. *See Lancaster v. Comm'r of Soc. Sec.*, 228 F. App'x 563, 573 (6th Cir. 2007) (remanding the case to the ALJ because the question posed to the vocational expert

described the claimant's mental restrictions as "mild," when the ALJ had earlier found them to be "moderate").

**(2)   *Whether the Magistrate Judge applied the correct standard when addressing Plaintiff's argument that the ALJ's hypothetical question to the vocational expert was flawed because it did not include his mental limitations.***

Plaintiff argues that the Magistrate Judge applied the wrong standard when addressing his argument. (Pl.'s Objs. at 7.) Specifically, Plaintiff argues that the Magistrate Judge applied the standard applicable at step three– whether a limitation is "marked" for purposes of determining whether an impairment meets or equals a listed impairment – instead of addressing whether these impairments would limit what Plaintiff can or cannot do in a vocational setting. (*Id.*) Plaintiff concedes his mental limitations do not meet or equal a listed impairment; however, he contends that "they do impart significant vocational limitations" and thus should have been included in his residual functional capacity and the question to the vocational expert. (*Id.*)

**(3)   *Whether the hypothetical question was flawed because it did not include Plaintiff's mental limitations.***

Plaintiff requests that the claim "be remanded for additional testimony from a vocational expert to assess the impact of the Plaintiff's mental limitations on his ability to satisfactorily perform work in a competitive setting." (*Id.* at 9.)

"The vocational expert testifies on the basis of a claimant's 'residual functional capacity and . . . age, education, and work experience' . . . ." *Webb*, 368 F.3d at 633 (quoting 20 C.F.R. § 416.920(a)(4)(v)) (first alteration in original). Plaintiff's residual functional capacity does not indicate any mental limitations, but it is not entirely clear from the record whether this was proper. When the ALJ gave little weight to the GAFs of 40 based on Plaintiff's improvement with treatment from medication and based on

11

Plaintiff's functioning, the ALJ also gave "great weight" to the GAFs of 51 to 60. (Tr. at 22-24). A GAF of 51 to 60 does not mean that a person has no limitation in job functioning, but instead it "signals the existence of moderate difficulty in social or occupational functioning.'" *White*, 572 F.3d at 276; *see also White, Jr. v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 787 (6th Cir. 2009) (where Plaintiff was diagnosed with "adjustment disorder and depression, giving him a GAF of score of 55, indicating moderate symptoms," the ALJ erred by giving "no explanation for totally discounting the objective evidence of [claimant's] impairment in determining [claimant's] RFC."). Thus, in this case, the ALJ gave "great weight" to the fact that Plaintiff had moderate difficulty in social or *occupational* functioning. *See* Am. Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994) (citing few friends and conflicts with peers or co-workers as examples of a GAF score of 51 to 60). Further, the ALJ stated that Plaintiff had moderate restriction in activities of daily living, moderate difficulties in social functioning, and moderate difficulties with regard to concentration, persistence or pace. (Tr. at 23.) The ALJ stated that he translated these findings "into work-related functions in the residual functional capacity assessment" at Step 4; however, no further mention is made of them in the opinion. (*See id.* at 24.) The ALJ's residual functional capacity, which does not include any mental limitations, seems inconsistent with his prior determination that Plaintiff has these moderate restrictions, notwithstanding his assertion that he "translated" them into "work-related functions." If the residual functional capacity failed to properly account for Plaintiff's mental

12

limitations,[3] then the hypothetical question lacking the same was also improper.  *See*

*Simpson v. Comm'r of Soc. Sec.*, No. 08-3651, 2009 WL 2628355, at *9 (6th. Cir. Aug.

29, 2009) (reversing "the district court's judgment because it affirmed the ALJ's

improper calculation of [claimant's] RFC, which informed the hypothetical question,

whose answer the ALJ relied upon to determine that [claimant] could not work").

Because the ALJ relied solely on the testimony of the vocational expert in

---

[3]The ALJ references Plaintiff's mental health reports at three instances when discussing Plaintiff's residual functional capacity.  The ALJ discounted two state psychiatric examiner opinions because "the claimant testified subsequent to the state agency psychiatric examiner's opinion and the state agency psychiatric examiner did not consider the claimant's testimony."  (Tr. at 25-26.)  On June 27, 2005, the state agency examiner found:

> the claimant's mental impairments caused moderate limitations in his ability remember locations and work-like procedures; to understand and remember detailed instructions; to carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to sustain an ordinary routine without supervision; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace wihtou an unreasonable number and length of rest periods; to accept instructions and respond appropriately to criticism from supervisors; to respond appropriately to change in the work setting; and to set realistic goals or make plans independently.

(Tr. at 25.)  On April 20, 2006, the state agency examiner concluded that "the claimant's major depression caused mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace.  (Id. at 26.)  While discounting these findings seems inconsistent with the ALJ's prior findings regarding Plaintiff's moderate difficulties (*see, e.g.*, the ALJ finding that Plaintiff has moderate difficulties with regard to concentration, persistence, or pace and then later giving little weight to the same conclusion by a psychiatrist), the ALJ's credibility determinations are afforded considerable deference.  *Casey*, 987 F.2d at 1234.  The ALJ also noted that Plaintiff requested counseling from MCCMH on May 26, 2005, that he was not interested in being referred to the Arab-American/Chaldean Counsel, and that he "indicated that he could be flexible about appointment times because he was able to drive."  (Tr. at 26.)

determining that Plaintiff was not disabled at step five, it is imperative that the hypothetical question posed to the vocational expert "accurately portray Plaintiff's physical and mental state." *Lancaster*, 228 F. App'x at 573. Accordingly, the court directs the Government to respond to Plaintiff's objection regarding the hypothetical question posed to the vocational expert.

**C. Objection Number Three**

Finally, Plaintiff objects to the Magistrate Judge's failure to consider the disability finding by the State of Michigan ALJ. (Pl.'s Obj. at 10.) Plaintiff was found to be disabled by the State of Michigan on December 8, 2005, and entitled to State Disability Assistance ("SDA"). (Tr. at 254-61.) Plaintiff argues that it was error to not consider this finding because the "SDA applies the same operative definition for 'disabled' as used for SSI under Title XVI of the Social Security Act." (Pl's Obj. at 10 (citing 42 C.F.R. § 435.540(a)).

Plaintiff's objection is without merit. The Regulations clearly state that "[a] decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind." 20 C.F.R. § 416.904; *see also Noble v. Sec'y of Health and Human Servs.*, No. 88-1433, 1989 WL 25784, at *1 (6th Cir. 1989) ("Plaintiff Noble is in error in concluding that the findings of the state agency were in any way binding upon the Secretary."). Accordingly, the ALJ and Magistrate Judge were not required to consider the conclusion by the state agency that Plaintiff was disabled, and the court will overrule this objection.

## IV.  CONCLUSION

For the reasons stated above,

IT IS ORDERED that Plaintiff's Objections Numbers One and Three [Dkt. # 13] are OVERRULED.

IT IS FURTHER ORDERED that the Government is DIRECTED to file a response to Plaintiff's Objection Number Two by **December 28, 2009.**

        s/Robert H. Cleland
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated:  December 18, 2009

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, December 18, 2009, by electronic and/or ordinary mail.

        s/Lisa Wagner
        Case Manager and Deputy Clerk
        (313) 234-5522