# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

HISHAM ELIAS,

     Plaintiff,

v.                                 Case No. 08-14583

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

_____/

**OPINION AND ORDER (1) SUSTAINING PLAINTIFF'S OBJECTION NUMBER TWO,
(2) REJECTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION,
(3) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,
(4) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND (5) REMANDING THE CASE FOR FURTHER PROCEEDINGS**

On October 26, 2009, Magistrate Judge Mark A. Randon issued a Report and

Recommendation ("R&R") in the above-captioned matter, recommending that this court

grant Defendant Commissioner of Social Security's motion for summary judgment and

deny Plaintiff Hisham Elias's motion for summary judgment. On November 3, 2009,

Plaintiff filed timely objections to the R&R. The court overruled Plaintiff's Objections

One and Three on December 18, 2009, and directed the Commissioner to file a

response to Plaintiff's Objection Two. On December 28, 2009, the Commissioner filed a

response to Objection Two, and Plaintiff filed a reply on January 4, 2010. For the

reasons stated below, the court will sustain Plaintiff's Objection Number Two, reject the

magistrate judge's report and recommendation, deny Defendant's motion for summary

judgment, deny Plaintiff's motion for summary judgment, and remand the case for

further proceedings.

# I. BACKGROUND

On December 14, 2005, Plaintiff filed an application for a period of disability and disability insurance benefits and made a claim for supplemental security income payments. (Tr. at 17.) In order to determine whether a person is disabled under the Social Security Act, the Social Security Administration applies a five-step sequential analysis pursuant to C.F.R. § 404.1520. The Sixth Circuit has summarized the steps as follows:

> The claimant must first show that she is not engaged in substantial gainful activity. Next, the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

*White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 282 (6th Cir. 2009) (citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001), and 20 C.F.R. § 404.1520(a)(4)(i)-(v)).

The ALJ applied the five-step sequential analysis under C.F.R. § 404.1520 and found that Plaintiff was not disabled as defined in the Social Security Act. (Tr. at 28.) Under steps one and two, the ALJ found that Plaintiff had "not engaged in substantial gainful activity since March 2, 2005" and that Plaintiff had the following severe impairments:

> status post ligation and excision of the right thigh varicosity; history of non-insulin-requiring diabetes; hypertension; asthma; severe dysthymia; morbid obesity; major depression, recurrent severe (provisional) and with psychotic symptoms; post-traumatic stress disorder; rule out bipolar

disorder; morbidly obesity; mild obstructive sleep apnea; moderate hypoxia; moderate sleep disruption; coronary artery disease; hypertension; chronic obstructive pulmonary disease; left heart catheterization; moderate disease in the left coronary system; total occlusion in the right coronary artery; hyperlipidemia; chronic obstructive pulmonary disease; shortness of breath; fatigue; and back pain.

(*Id.* at 19-20 (citations omitted).)

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal "one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.* at 22.) In making this determination, the ALJ found that "the GAFs[1] of 51 to 60 will be given great weight," while the GAF of 40 assigned by Plaintiff's treating psychiatrist, Dr. Hemachandra, "will not be given great weight." (*Id.* at 22-23.) The ALJ also found that Plaintiff had moderate restriction in the activities of daily living, moderate difficulties in social functioning, and moderate difficulties with regard to concentration, persistence or

---

[1]Global Assessment of Functioning ("GAF") "examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations." *White*, 572 F.3d at 275-76. The GAF score is:

a subjective determination that represents the clinician's judgment of the individual's overall level of functioning. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). A GAF score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood. A GAF of 41 to 50 means that the patient has serious symptoms . . . OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning.

*Id.* at 276 (quoting *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 924 n.1 (E.D. Mich. 2005)) (alteration in original).

pace. (*Id.* at 23.) Because none of these limitations were "marked," the ALJ

determined that Plaintiff's impairments did not meet or medically equal a listed

impairment. (*Id.* at 24.)

After translating his step-three findings into "work-related functions," at step four,

the ALJ concluded that Plaintiff had a residual functional capacity ("RFC") to perform

unskilled entry level sedentary work with the following exceptions:

> a lifting limitation of 10 pounds where he would be required to lift less than
> five pounds and frequently less than one pound or less, sit eight hours a
> day or the majority of the day, stand for up to one hour, in an office or
> quasi office setting, in a relatively clean environment without obvious
> particulates in the atmosphere, and where he would be able to elevate his
> feet to footstool height of 15 to 18 inches.

(*Id.* at 24.) Based on this residual functional capacity, the ALJ concluded that Plaintiff

was unable to perform any past relevant work. (*Id.* at 24-27.)

The ALJ referenced Plaintiff's mental health reports when discussing Plaintiff's

residual functional capacity. On June 27, 2005, Dr. Hemachandra found:

> the claimant's mental impairments caused moderate limitations in his
> ability remember locations and work-like procedures; to understand and
> remember detailed instructions; to carry out detailed instructions; to
> maintain attention and concentration for extended periods; to perform
> activities within a schedule, maintain regular attendance, and be punctual
> within customary tolerances; to sustain an ordinary routine without
> supervision; to complete a normal workday and workweek without
> interruptions from psychologically based symptoms and to perform at a
> consistent pace without an unreasonable number and length of rest
> periods; to accept instructions and respond appropriately to criticism from
> supervisors; to respond appropriately to change in the work setting; and to
> set realistic goals or make plans independently.

(*Id.* at 25, 130-31.) On April 20, 2006, a state agency examiner concluded that "the

claimant's major depression caused mild restriction of activities of daily living, mild

difficulties in maintaining social functioning, and moderate difficulties in maintaining

concentration, persistence or pace." (*Id.* at 26, 151.) The ALJ discounted both of these opinions because "the claimant testified subsequent to the state agency psychiatric examiner's opinion and the state agency psychiatric examiner did not consider the claimant's testimony." (*Id.* at 25-26.)

At step five, the ALJ determined that Plaintiff was not disabled because "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform." (*Id.* at 27.) Specifically, the ALJ determined that Plaintiff could perform the jobs of lobby attendant and badge checker in a hospital or clinical setting, and that there were 6,000 of these jobs in Southeast Michigan, 12,000 in Michigan, and 200,000 in the national economy. (*Id.* at 28.)

In making this determination, the ALJ relied on the testimony of a Vocational Expert ("VE"), Pauline Pegram. At the hearing, the ALJ posed the following hypothetical question to the VE:

> Assuming he can't go back to his former work for a number of reasons, his asthma, his inability to work in someplace with medium to heavy industrial pollution, his inability to stand more than an hour or so, and his carpal tunnel which would limit him to somewhere between one and ten pounds, could you identify any type of sedentary work that exists in a relatively clean environment that would be unskilled?

(*Id.* at 286.) The VE testified that the following occupations satisfied the criteria: (1) lobby attendant, "simply answering questions as people come in" and sometimes combined with a responsibility "to do systems monitoring or closed circuit camera review and then make a phone call if necessary," (2) identification or badge checker, "often in hospital clinical settings, places like that, where you have to verify that persons have on adequate badge and signage and do some random checking," and (3) gate

tender. (*Id.* at 286-88.) After the ALJ excluded gate tender from consideration, the VE testified that there were 12,000 of these jobs in Michigan, half of which were in Southeast Michigan, and approximately 200,000 in the country. (*Id.*) The ALJ then asked,

> With the claimant's complaints, the chest pain once a week, the headaches once or twice a week, the back and leg pain he has, the, if we say the depression is moderate to mild, would that, any of that have a negative impact on the performance of these jobs?

(*Id.* at 289-290.) The VE replied,

> Well, just in general, Your Honor, talking about mild to moderate difficulty with depression would not be preclusive. With respect to the blood, excuse me, the lower back pain, the lower extremities in terms of the discomfort associated with apparently varicose veins, I think it would depend upon his ability to tolerate those levels of pain without having it interfere with attention and concentration, and you know, these are not high speed production tasks. You do have to get out. You have to do your job throughout the day and pay attention . . . If it interferes with that to such an extent that he can't carry it out and be productive 90 percent of the time, then it would be preclusive.

(*Id.* at 290.) Based on this testimony, the ALJ concluded that Plaintiff could perform jobs that existed in the national economy and therefore he was not disabled. (*Id.* at 27-28.)

On October 28, 2008, Plaintiff sought review of the Commissioner's decision in this court pursuant to 42 U.S.C. § 405(g). The case was referred to Magistrate Judge Steven D. Pepe, and then subsequently reassigned to Magistrate Judge Randon pursuant to Administrative Order 09-AO-027. Magistrate Judge Randon recommended granting the Commissioner's motion for summary judgment, concluding that the ALJ's determination that Plaintiff was not disabled was supported by substantial evidence. (R&R at 2.) Plaintiff lodged three objections to the Magistrate Judge's R&R.

The court overruled Plaintiff's Objections One and Three on December 18, 2009. In overruling Objection One, the court concluded that substantial evidence supported the ALJ's decision to give greater weight to the GAF score of 51 to 60, rather than the GAF of 40 assigned by Dr. Hemachandra. (12/28/09 Order at 6-9.) The court overruled Objection Three as without merit, where Plaintiff argued that the Magistrate Judge erred by failing to consider the disability finding made by the State of Michigan ALJ. (*Id.* at 14.) With respect to Objection Two, the court directed the Commissioner to filed a targeted response. (*Id.* at 1, 9-14.) Both the Commissioner and Plaintiff filed additional briefs on this issue.

## II. STANDARD

### A. Substantial Evidence Standard

Pursuant to 42 U.S.C. § 405(g), the Commissioner's findings of fact are conclusive if supported by substantial evidence. When the Appeals Council declines review, "the decision of the ALJ becomes the final decision of the [Commissioner]." *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) (per curiam). "The decision of an ALJ is reviewed to determine whether it is supported by substantial evidence and consistent with applicable law." *Pittsburgh & Conneaut Dock Co., v. Dir., Office of Workers' Comp. Programs*, 473 F.3d 253, 258 (6th Cir. 2007). This judicial review is limited to the record and evidence that was before the ALJ. *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (citing *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993)).

The court's review of the record for substantial evidence is quite deferential to the ALJ's evaluation of the facts. The court must uphold the ALJ's finding if supported by

substantial evidence. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Pittsburgh & Conneaut Dock Co.*, 473 F.3d at 259 (citation omitted), "even if that evidence could support a decision the other way," *Casey*, 987 F.2d at 1233. Moreover, the court bases its review on the entire record, not just what the ALJ cited. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001) ("Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council.").

### B. Timely Objections and *De Novo* Review

The filing of timely objections requires the court to "make a *de novo* determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). This *de novo* review, in turn, requires this court to re-examine all the relevant evidence previously reviewed by the magistrate judge to determine whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1). The court may "receive further evidence" if desired. *Id.*

A party who files timely objections to a magistrate judge's report in order to preserve the right to appeal must be mindful of the purpose of such objections: to provide the district court "with the opportunity to consider the specific contentions of the parties and to correct any errors immediately." *Walters*, 638 F.2d at 949-50. The Supreme Court upheld this rule in *Thomas v. Arn,* 474 U.S. 140 (1985), noting that

"[t]he filing of objections to a magistrate's report enables the district judge to focus attention on those issues--factual and legal--that are at the heart of the parties' dispute." *Id.* at 147 (footnote omitted).

Furthermore, "[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review;  making some objections but failing to raise others will not preserve all the objections a party may have." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

## III.  DISCUSSION

### A. Objection Number Two

Plaintiff objects to the Magistrate Judge's rejection of his argument that the "ALJ failed to pose complete and accurate hypothetical questions to the vocational expert." (Pl.'s Obj. at 7.)  Plaintiff argues that the hypothetical question was defective because it failed to include Plaintiff's mental limitations.  (*Id.* at 9.)  In addressing Plaintiff's argument, the Magistrate Judge stated, "Dr. Hemachandra concluded that Plaintiff was not markedly limited in any of the categories in the completed Mental Residual Functional Capacity Assessment.  Thus, the ALJ properly omitted any limitation found by Dr. Hemachandra in the MRFCA."  (R&R at 16.)  Having reviewed the R&R and Plaintiff's Objection, the court will sustain Plaintiff's Objection Number Two.

Because the Commissioner determined that Plaintiff did not possess the RFC to perform past relevant work, the burden shifted to the Commissioner "to show that plaintiff possesses the capacity to perform other substantial gainful activity that exists in the national economy."  *Varley v. Sec. of Health & Human Servs.*, 820 F.2d 777, 779

(6th Cir. 1987). In order to make this showing, the Commissioner may rely on a vocational expert's testimony in response to a hypothetical question. *Id.* "The vocational expert testifies on the basis of a claimant's 'residual functional capacity and . . . age, education, and work experience' and assesses whether the claimant 'can make an adjustment to other work.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (quoting 20 C.F.R. § 416.920(a)(4)(v)) (alteration in original). In order for the Commissioner to rely on the vocational expert's response, the hypothetical question must "accurately portray [the claimant's] individual physical and mental impairments." *Varley*, 820 F.2d at 779 (quotation omitted); *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (stating that the hypothetical question must "paint an accurate picture" of the claimant's impairments).

As the court explained in its December 18, 2009 order, the court rejects Plaintiff's argument that the hypothetical should have mentioned "the severe impairments of: severe dysthymia; major depression, recurrent severe (provisional) and with psychotic symptoms or post traumatic stress disorder." (Pl.'s Objs. at 8.) Plaintiff's argument is incorrect because all impairments deemed severe in step two are not required to be included in the hypothetical. *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Webb*, 368 F.3d at 633 (holding that hypothetical questions are not required to include lists of a claimant's medical conditions). Nonetheless, the court finds that the hypothetical question posed to the VE was flawed because it relied on an RFC that failed to take into account Plaintiff's mental limitations.

**B. The Hypothetical Was Flawed Because It Was Premised On an Incomplete RFC**

"A claimant's 'RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis,' which is defined as '8 hours a day, for 5 days a week, or an equivalent work schedule.'" *White, Jr. v. Comm'r of Social Sec.*, 312 F. App'x 779, (6th Cir. 2009) (quoting Soc. Sec. Rul. 96-8p). The RFC is "an assessment of the most a claimant can still do despite his limitations." *Griffeth*, 217 F. App'x at 429 (citing 20 C.F.R. § 404.1560(b)(2)). When assessing the RFC, the ALJ must take into account the limitations from all of a claimant's impairments, even those not deemed "severe." Soc. Sec. Rul. 96-8p. The RFC "is meant to describe the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from - though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard*, 276 F.3d at 240.

After a fairly extensive discussion of Plaintiff's mental impairments at step three, including giving great weight to a GAF of 51 to 60 and finding that Plaintiff had moderate difficulties in social functioning, moderate restriction in activities of daily living, and moderate difficulties with regard to concentration, persistence, or pace, the ALJ translated these "findings into work-related functions in the residual functional capacity assessment." (Tr. at 22-24.) Plaintiff's RFC, however, does not indicate that his mental limitations were actually considered when making this assessment. The RFC provides for many work-related restrictions with respect to Plaintiff's physical impairments. But the only limitation that can be construed as relating to Plaintiff's mental impairments is the restriction to "unskilled entry level" work.

Limiting Plaintiff's mental RFC to merely "unskilled" work is inconsistent with the ALJ's prior findings with respect to Plaintiff's mental limitations.  As the Social Security Administration has explained, "Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job.  A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job."  Soc. Sec. Rul. 85-15; *see Craft v. Astrue*, 539 F.3d 668, 677 (7th Cir. 2008) ("[H]ere, the RFC was for 'unskilled' work, which by itself does not provide any information about [the claimant's] mental condition or abilities.").  The Social Security Administration has also stated "that where the claimant has the ability to understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting, then an RFC of 'unskilled' work would be appropriate.'"  *Craft*, 539 F.3d at 677 (citing 20 C.F.R. § 404.1545(c); Soc. Sec. Rul. 85-15).

The court finds that the RFC, which accounted only for Plaintiff's mental limitations through a requirement of "unskilled" work, is not supported by substantial evidence because the court is unable to discern whether the ALJ actually found Plaintiff to have those abilities required to perform unskilled work.  *Id.*  When the ALJ gave little weight to the GAFs of 40 based on Plaintiff's improvement with treatment from medication and based on Plaintiff's functioning, the ALJ also gave "great weight" to the GAFs of 51 to 60.  (Tr. at 22-24.)  Although the ALJ was not required to consider the GAF score at all, *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007), it is the only section of Plaintiff's medical records that the ALJ gave positive weight.  A GAF of 51 to

60 does not mean that a person has no limitation in job functioning, but instead it "signals the existence of moderate difficulty in social or occupational functioning.'" *White*, 572 F.3d at 276; *see Kennedy*, 247 F. App'x at 766 (rejecting the Commissioner's argument that an increase in GAF score from 55 to 60 provided substantial evidence for a finding of an "improvement in mental functioning" because GAF scores are not raw medical data and both scores indicate "moderate symptoms or moderate difficulty in social, occupational or school functioning"). The ALJ's finding means that he gave "great weight" to the fact that Plaintiff had moderate difficulty in social or *occupational* functioning. *See* Am. Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) 32 (4th ed. 1994) (citing having few friends and conflicts with peers or co-workers as examples of a GAF score of 51 to 60). Further, the ALJ stated that Plaintiff had moderate restriction in activities of daily living, moderate difficulties in social functioning, and moderate difficulties with regard to concentration, persistence or pace. (Tr. at 23.) Based on these findings, which the court finds are supported by substantial evidence, it is unclear whether they were considered when Plaintiff was assessed a mental RFC limiting him to "unskilled" work.

Besides the discussion of the GAF score and the findings regarding Plaintiff's restrictions, there is little in the ALJ's opinion dealing with Plaintiff's mental limitations. In discussing the reasons for the RFC, the ALJ addressed only the medical opinion evidence regarding Plaintiff's mental limitations twice. In each instance, the ALJ did not give great weight to the opinions "[s]ince the claimant testified subsequent to the state agency psychiatric examiner's opinion and the state agency psychiatric examiner did not consider the claimant's testimony." (Tr. at 25-26.) This conclusory statement is the

only reason given for discounting these opinions, one of which was made by Plaintiff's treating psychiatrist. The ALJ did not indicate what aspect of Plaintiff's testimony called into question these opinions by psychiatrists. In fact, the ALJ's description of what the "claimant testified to" does not accurately portray Plaintiff's testimony at the hearing in 2008, but instead seems to derive from medical and psychiatric evaluations from 2005 and 2006. *See White, Jr.*, 312 F. App'x at 787 ("Because the ALJ does not accurately state the evidence used to support his finding, his total discounting of the mental impairment is not supported by substantial evidence."). Given the conclusory and unsupported reason for discounting the psychiatrists' findings, the ALJ's prior findings of moderate difficulties in concentration and social functioning which mirror the discounted psychiatrists' findings, the "great weight" given to the GAF score of 51 to 60, and the other evidence of Plaintiff's mental limitations contained in the record, the court concludes that there is not an "accurate and logical bridge" between the ALJ's findings and his decision to account only for Plaintiff's mental impairments in the RFC by limiting him to unskilled work. *Craft*, 539 F.3d at 677-78. Because the hypothetical question that was posed to the VE was informed by the deficient RFC, it cannot serve as substantial evidence. *See Simpson v. Comm'r of Soc. Sec.*, No. 08-3651, 2009 WL 2628355, at *9 (6th. Cir. Aug. 29, 2009) (reversing "the district court's judgment because it affirmed the ALJ's improper calculation of [claimant's] RFC, which informed the hypothetical question, whose answer the ALJ relied upon to determine that [claimant] could not work").

**C. The Hypothetical Was Flawed Because It Failed to Account for Plaintiff's Deficiencies in Concentration and Occupational Functioning**

In addition to including the RFC in the hypothetical question, the ALJ also asked the VE a question about "depression [that] is moderate to mild." (Tr. at 289-90.) In directing the Government to respond to Plaintiff's objection, the court posited whether the hypothetical question was flawed because the ALJ had previously determined that Plaintiff suffered from, among other things, "major depression, recurrent severe (provisional) and with psychotic symptoms." (12/18/09 Order at 10.) The Commissioner acknowledged that the "ALJ's wording in his hypothetical could have been more precise," but argued that the VE's response that "mild to moderate difficulty with depression would not be preclusive" indicated that the ALJ did not misconstrue the severity of Plaintiff's mental limitations. (Gov't's Resp. at 2-3.) However, the Sixth Circuit has stated that "vocational experts are not required to have any medical training, so any evaluation of medical evidence they perform would be outside their area of expertise." *Webb*, 368 F.3d at 633. Depression and difficulties with depression are not occupational-based evaluations within the realm of expertise of a vocational expert. The vocational expert testifies at step five, after the impairments found by the ALJ have been converted into what the claimant can or cannot do in terms of work. Moreover, persons with difficulties with depression do not all have the same work-based limitations. *See* DSM-IV at 320 (symptoms of a major depressive episode include "changes in appetite or weight, sleep, and psychomotor activity; decreased energy; feelings of worthlessness or guilt; difficulty thinking, concentrating, or making decisions; or recurrent thoughts of death or suicidal ideation, plans, or attempts"). Even if the VE did know the medical features of a depressive disorder, the question would still be

unhelpful from the standpoint of evaluating available jobs in the national economy because not all persons with depression will necessarily have moderate difficulties with concentration, persistence, or pace not, as does Plaintiff.

The Commissioner's argument in this case is similar to an argument rejected in *Thomczek v. Chater*, No. 94-74011, 1996 WL 426247, at *2 (E.D. Mich. Jan. 5, 1996) (Cohn, J.), where the Commissioner argued that "any deficiency in the ALJ's questioning was cured by the totality of the VE's testimony." In *Thomczek*, like in this case, the ALJ did not include the claimant's inability to concentrate in the hypothetical question. *Id.* The vocational expert in *Thomczek* testified that the jobs "would involve only mild to moderate stress and could be filled by a person suffering from mild to moderate drowsiness" and that "[i]f the pain is so severe that it depress [sic] to the point where she is isolated, *incapable of concentrating and focusing*, then she couldn't perform the task." *Id.* (alteration and emphasis in original). The *Thomczek* court found that given the finding that claimant "often" suffers from difficulties in concentration, the ALJ's discussion of claimant's concentration problems was inadequate. *Id.* at *3. It reasoned that the "VE's one reference to concentration problems does not cure the ALJ's omission because it does not deal with [claimant's] specific situation." *Id.* In this case, the VE's testimony did not cure the flaws in the ALJ's question. The VE's testimony regarding the preclusive effect of "mild to moderate difficulty with depression" is inadequate because it does not deal with Plaintiff's specific situation – specifically, it does not address the manifestations of that depression in terms of Plaintiff's job functioning, e.g., the concentration problems, which the ALJ previously found to exist.

Other courts have addressed the adequacy of hypothetical questions when, as in this case, the ALJ found that a claimant had moderate difficulties with concentration, persistence, and pace. In *Smith v. Halter*, 307 F.3d 377 (6th Cir. 2001), the claimant argued that the ALJ did not accurately portray his mental impairments when the hypothetical question failed to include an instruction that the claimant "often" suffered from "deficiencies in concentration, persistence, and pace resulting in failure to complete tasks in a timely manner," as the ALJ stated in the Psychiatric Review Technique.[2] 307 F.3d at 379. In the question to the vocational expert, the ALJ characterized the claimant's "mental impairment as limiting him to jobs that are routine and low stress, and do not involve intense interpersonal confrontations, high quotas, unprotected heights, or operation of dangerous machinery." *Id.* at 378. The Sixth Circuit held that this question accurately characterized the claimant's mental impairments and that the failure to include a specific instruction that claimant "often" had difficulty in concentrating was not error. *Id.* at 379. In so doing, the Sixth Circuit distinguished cases cited by the claimant finding them inapposite because the ALJs in those cases, unlike the ALJ in *Smith*, "appear to have made no attempt to incorporate concentration difficulties in their instructions to the vocational expert." *Id.* at 379-80. Similarly, in *White*, the Sixth Circuit distinguished a district court case because the hypothetical question in that case "gave the VE no indication that the plaintiff had 'moderate limitations [on] concentration, persistence, and pace.'" 572 F.3d at 288

---

[2]"*Smith* was decided when the regulations relating to concentration rated that factor based on frequency as opposed to the current regulations that use a five level severity rating of (1) none, (2) mild, (3) moderate, (4) marked, and (5) extreme." *Brown v. Comm'r of Soc. Sec.*, No. 07-15418, 2009 WL 596360, at *8 (E.D. Mich. Mar. 9, 2009) (Roberts, J.).

(finding no error in a hypothetical question, which stated that "[o]ur hypothetical Claimant also needs simple repetitive type work or [sic] because of a moderate limitation in [the] ability to maintain attention and concentration due to mental impairment" (alteration in original)).

Applying the *Smith* standard, cases within the Eastern District of Michigan have been remanded when an ALJ made a finding –as in this case– that the claimant had moderate difficulties as to concentration, persistence, and pace, yet failed to adequately account for this finding in the hypothetical question. *See, e.g.*, *Bonham-Conn v. Comm'r of Soc. Sec.*, No. 08-13248, 2009 WL 3211000 (E.D. Mich. Sept. 29, 2009) (Battani, J.). For example, in *Benton v. Comm'r of Soc. Sec.*, 511 F. Supp. 2d 842, 845, 849 (E.D. Mich. 2007) (Roberts, J.), the court held that a hypothetical question that included a restriction to "simple, routine, repetitive tasks" was insufficient to accommodate the claimant's concentration limitations, when the ALJ previously determined that claimant had moderate limitations of concentration, persistence, or pace. In *Brown*, the court held that a hypothetical question that included a limitation to "simple and routine" jobs did not properly reflect the limitation of someone with moderate deficiencies in concentration, persistence or pace. 2009 WL 596360, at *8-*9. Similarly, in *Alhin v. Comm'r of Soc. Sec.*, No. 07-12352, 2008 WL 2743954, at *5 (E.D. Mich. July 11, 2008) (Duggan, J.), the court held that "the ALJ's hypothetical question referring to 'simple, routine, and repetitive tasks,' was not detailed enough to encompass the ALJ's findings of fact that Plaintiff had 'moderate deficiencies in concentration, persistence and pace resulting in failure to complete tasks in a timely manner' and that Plaintiff had 'some deficiencies in this area [sustaining focused

attention and concentration] which result in incomplete tasks." (alteration in original).

While other cases in this District have found a simple, routine and repetitive limitation

sufficient to account for moderate difficulties in concentration, persistence, and pace,

*see Millender v. Comm'r of Soc. Sec.*, No. 07-14807, 2009 WL 37185 (E.D. Mich. Jan.

7, 2009) (Feikens, J.), *Bohn-Morton v. Comm'r of Soc. Sec.*, 389 F. Supp. 2d 804 (E.D.

Mich. 2005) (Rosen, J.), no cases have upheld a limitation to merely unskilled work or a

simple recitation of a medical diagnosis. *See Bohn-Morton*, 389 F. Supp. 2d at 805

(initially remanding because "the ALJ's generalized limitation to unskilled work did not

adequately incorporate the specific non-exertional limitations that necessarily must have

existed in light of the ALJ's determination that Plaintiff 'often' suffered from a deficiency

of concentration, persistence, or pace").

In this case, the ALJ did not adequately incorporate the mental limitations in the

hypothetical question to the VE. Unlike the hypothetical questions in *White* and *Smith*,

the hypothetical question in this case "gave the VE no indication that the plaintiff had

'moderate limitations [on] concentration, persistence, and pace.'" *White*, 572 F.3d at

288; *Smith*, 307 F.3d at 379-80. The ALJ's limitation to "unskilled" work and then noting

"moderate to mild depression" in the hypothetical did not adequately provide job

restrictions that corresponded to Plaintiff's problems with concentration, persistence,

and pace, or Plaintiff's moderate difficulties in social or occupational functioning. As

discussed above, depression and moderate difficulties with depression do not

necessarily correspond to an ability or inability to concentrate. Indeed, this "limitation" is

a medical diagnosis, and does not necessarily equate to a job-based functional

limitation. *Webb*, 368 F.3d at 633 ("The vocational expert is not expected to evaluate

the claimant's medical conditions in making [his or her] determination."). Moreover, substantial evidence does not support the limitation in Plaintiff's RFC to merely unskilled work as such a limitation is inadequate to describe someone with Plaintiff's mental limitations. *See Craft*, 539 F.3d at 677-78; *Bohn-Morton*, 389 F. Supp. 2d at 805. When the ALJ previously found that Plaintiff suffered moderate difficulty in social functioning, moderate restriction in activities of daily living, moderate difficulty maintaining concentration, persistence, or pace, and gave "great weight" to a GAF of 51 to 60, characterized by moderate difficulty in social and occupational functioning, the combination of the limitations of "unskilled" and "mild to moderate depression" do not adequately account for what Plaintiff can or cannot do in a work setting.

The VE perhaps recognized this fact, and went on to state that, "You have to do your job throughout the day and pay attention . . . If it interferes with that to such an extent that he can't carry it out and be productive 90 percent of the time, then it would be preclusive." (Tr. at 290.) Thus, in order for the ALJ to have found that Plaintiff was not disabled, he implicitly had to find that Plaintiff could pay attention and be productive for 90% of the time. However, this implicit finding is not compatible with the ALJ's previous finding that Plaintiff had moderate difficulties with regard to concentration, persistence or pace or the great weight given to the conclusion that Plaintiff had moderate difficulties in social and occupational functioning. Like the courts in *Brown* and *Benton*, this court finds "it hard to imagine a 'moderate' problem occurring less frequently than 20% of the time, which according to the VE in the present case, would be work preclusive." *Brown*, 2009 WL 596360, at *9 n.3; *Benton*, 511 F. Supp. 2d at 848 (noting that a moderate limitation in concentration constitutes a concentration

reduction of at least 10%).

A proper hypothetical question accurately states both the plaintiff's mental and physical limitations. *Howard*, 276 F.3d at 241; *Varley*, 820 F.2d at 779. The court concludes that the hypothetical question in this case did not accurately portray Plaintiff's mental limitations and that the Commissioner did not meet his burden at step five. Therefore, the court finds that there was not substantial evidence to support the Commissioner's finding of no disability. Because the Magistrate Judge determined that substantial evidence supported the Commissioner's decision, the court will not adopt the report and recommendation.

## IV.  CONCLUSION

The court is permitted to enter a judgment "reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In light of the court's determination that the RFC and hypothetical question did not properly incorporate Plaintiff's mental limitations, the court will remand the case to the ALJ for further consideration. Accordingly,

IT IS ORDERED that Plaintiff's Objection Number Two [Dkt. # 19] is SUSTAINED and the Magistrate Judge's October 26, 2009 report and recommendation [Dkt. # 18] is REJECTED.

IT IS FURTHER ORDERED that the Commissioner's "Motion for Summary Judgment" [Dkt. # 16] and Plaintiff's "Motion for Summary Judgment" [Dkt. # 13] are

DENIED.  The case is REMANDED to the Commissioner for further proceedings

pursuant to 42 U.S.C. § 405(g).

        s/Robert H. Cleland
       ROBERT H. CLELAND
       UNITED STATES DISTRICT JUDGE

Dated:  February 12, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record on
this date, February 12, 2010, by electronic and/or ordinary mail.

        s/Lisa Wagner
       Case Manager and Deputy Clerk
       (313) 234-5522